Thank you. Good morning, Your Honors. May it please the Court, Council. My name is Dave Mattingly, and I represent Mr. Christopher Boudreau. My office is in Kalispell, Montana. I intend to reserve approximately three minutes for rebuttal. In our briefs, we brought up four issues, really five issues, that these critical mistakes warrant reversal. The first issue was the warrant regarding the search of Mr. Boudreau's residence. That warrant requested virtually everything from Mr. Boudreau's residence, including electronic devices. Detective Wofstedt's affidavit, however, if you look at the four corners of that affidavit, failed to establish the required nexus between the offense conduct or the alleged offense conduct of enticement of Mia and the actual residence, more importantly, the electronic devices. The connection or nexus requires a fair probability that evidence of that crime would be located in the residence or on the electronic devices. Because that doesn't exist, there is not a fair probability. Law enforcement conducted an unlawful intrusion into Mr. Boudreau's residence. Can we drill down on that a little bit? I mean, unlike the Daughtry case, here you did have in the affidavit information about the use of electronics in communicating with Mia, and you also had information that he had electronics at home and that he'd used them to access pornography. So I need you to walk through why that's not enough. Sorry, Your Honor. I don't think that's clear from the four corners of the affidavit. The affidavit states that he watched pornography and had a computer. It's silent as far as to Internet connection, what devices were there. But if you go back to the four corners, what we actually have is communication that was solely mobile-to-mobile communications. The fair probability that evidence exists to search that entire home isn't there because the entire communication was mobile-to-mobile. Now, the district court did reference that the messages themselves implicate the home, but I think it's important to note that the record reflects on the warrant that the photos were taken with his cell phone. His cell phone is in some of those photos. They were selfies with Mr. Boudreau. They were not illicit in nature. Some of the photos also included a cat and other photos of, like, a video game within the home. He did not request or receive any illicit photos of Mia, and that's referenced in ER 163 in the second full paragraph. Nothing implicated those other electronics within the home. So it's a little different when we go to Doherty, and in Doherty, the officer's experience alone is insufficient to suggest evidence would be found on that computer. But here, if I can interrupt, I mean, it's the nature of electronic communications these days. I guess he may have used the phone. I don't know if it was Facebook or whatever social network it was where he set the front request. I mean, you could use it on your phone. You could use it on your desktop. There could be evidence on the desktop as well. Even text messaging, if you use Apple Message, you could use it on your iPad or your computer, depending what it is. So given how closely now electronic communication is tied, whether it's mobile or desktop, isn't that sufficient grounds to think, well, there may be some evidence in the desktop as well? No, and I think Doherty goes in and Rabe, in that case, which is cited in that case also, illustrates the particularity that you need some sort of bridge from that mobile phone to the electronic device that was eventually searched at home. I think you need some particularity with respect to that communication. Now, going a little further with respect to that question. Doherty wasn't, you know, the allegation there or the facts there was he, Melissa's students are in the classroom and there's no electronic nexus there. And then to go into his home and searching his computer is something different. But here it seems like, again, given the nature of electronic communications these days, there's a good chance there may be something on the desktop as well. That's right, Judge. But in that case, you'll note that the case actually noted that either law enforcement failed to search his work computer and or searched his work computer and didn't find anything. So, therefore, they couldn't bridge that gap to the actual home. Now, I think what you'll find here, too, is... Which would be a distinction from this case, where if they went to his phone, they would find that he was communicating with a putative 12-year-old and trying to solicit her for sex acts.  That's not that much of a leap these days to things on your home computer. Well, the distinguishment, though, here is that later on you find out through trial testimony and through the suppression hearing that Detective Wofstad had all that evidence on his phone and knew that the mobile-to-mobile texts were the only things there. And that was left out of this warrant. It was sort of alluded to. So if you look at the suppression hearing, he testifies to finding the phone in the car when he shows up to Missoula, calling the phone, and seeing his name show up as Mia on the phone. He also failed to testify or failed to elaborate on the fact that it was... Let me step back. This came back out in trial where he texts as Mia that my mom doesn't allow me to use Facebook Messenger. Please text me. So that's one communication on an Internet-based allegation, but it's Facebook Messenger, which we know is a mobile-to-mobile use of that. So when you look at the actual evidence here, Detective Wofstad knew that all the communications were mobile-to-mobile and omitted that factor. He then used the interview of my client and asked him, do you have a computer at home? And he answered yes. And in a separate question, he asked, do you watch pornography? And he asked yes, and he answered yes. That's the only implication of computer electronics at home. But that is such a small step these days. You know, in the Weber case, that was pre-Internet, and we acknowledged that in our en banc decision in Gord. We said that Weber was quite distinguishable because it was pre-Internet. In the days of the Internet, it is a very, very small step to go from, do you watch pornography, do you have a computer, to link those two things together. It would be unusual if there was nothing on the computer and that all of the pornography was being obtained through the mail or by a direct purchase at a bookstore. Well, and I think that the district court judge illustrated this point when he stated that exact point. And what then comes up is that in this day and age, if we just have a mobile-to-mobile crime, alleged crime, almost every time you can get to any sort of electronics in the residence. And I find that an extreme leap, given the situation that you just posed. Everything is connected. Echoes, TVs, everything. And I think without the particularity that's required to get to these electronic devices, I think you're then overstepping the Fourth Amendment bounds and intruding into the very succinct or safe place at home. So I think the best case on this is Doherty and then taking it further. And Doherty's unusual because this is not a criminal action. This is a 1983 suit. It's a question of immunity. And you have a plaintiff there that we already know was never charged with anything, including the pawing at the junior high girls. Well, and I think if you go further into the Gord case and the other cases cited within Doherty where they went into the home and cases after the fact, there is something connecting either an ISP, either an independent email address, either a website where they go to search for pornography, something attaching to this particular home that's not just within the officer's experience. And what I mean by that is essentially if you go further, well, let's step back. What actually I think law enforcement put the horse before the cart is what they should have done because they had it, is get the search warrant on the phone, search the phone, because they had all the evidence that they knew of with respect to enticement of Mia. Then in trial and in the suppression hearing, more testimony came out that they did look at the phone, found no particularized evidence about other enticement, other photos, other screenshots of purported minors or people who look like minors. They found no other information or texts to anyone else that was a minor or reasonably believed to be a minor. And they found no other evidence that this phone actually syncs up to the computer, there's nothing in the warrant that even suggests that the computer is hooked to the Internet. Now that can be a reasonable inference, but when you take all these steps, I think the fair probability that evidence of the enticement would be within those electronic devices is lacking, and it's not a fair probability in that case. And to take that step further is that then you go back to the reliance on just the statement that electronics are automatically synced to either an Internet or mobile-to-mobile device. And I think that's too far of a step without something else to indicate that an actual electronic device or Internet-enabled device was used at the home other than the mobile device. And therefore you can't get to the fair probability that evidence existed within those electronic devices. And so to go on to the next point that I made in my brief that I think is important, and it's sort of the second and third issue with respect to the hope evidence and Miss Joinder. And if your honors have any questions on that, I'm getting close to the time that I wanted to reserve. I will entertain those questions or reserve the last three minutes for rebuttal. Okay, great. Thank you. Tim Totarka May it please the Court, I'm still Tim Totarka on behalf of the United States from the District of Montana. When this Court reviews the validity of a warrant, it reviews to ask the question whether or not the issuing magistrate had a substantial basis for finding a probable cause. In this case, it's beyond dispute that there was probable cause to believe that Mr. Davis had expressed sexual interest in children and was attempting to do an attempted sexual assault of a minor. It is also undisputed that he was using Internet and digital means to do so. So the only remaining question is whether or not there was a substantial basis to believe that there would be evidence of that offense on his home electronics. Given the interconnectivity of digital media and the uses of a computer that the affiant testified to, there is absolutely a substantial basis. I have a different question, I guess, aside from the digital reality of the world. So, I mean, it's clear from the investigation that's laid out in the affidavit that you'd have a fair probability of searching for evidence related to enticement. There's a lot of stuff in the affidavit that talks about child pornography, and it's less clear how you bridge that gap. So what's the argument there for, based on what they knew about this defendant and his interactions with Mia online, that they were going to have a fair probability of finding child pornography? Two answers to that question. Well, I'll just answer the question directly. So, as I said, his sexual interest in children, certainly there's a probable cause of that. His discussions, I mean, what he actually did in terms of showing up to meet her with condoms and candy. So he had established a sexual interest in children, including in particular, I would recommend the course attention to, and this is an excerpt from the record, page 163, his stating that he wanted to be her personal photographer. I think that language, tied with the language of the fact that he was acknowledged viewing pornography and declining to identify his search terms, is a sufficient connection there. Oh, and I want to add one more point to that, which is the fact that he, and again, this is in the affidavit that he said, digital records can get me in trouble, but that didn't stop him from immediately continuing that conversation to engage in... Yeah, but that would go to enticement, right? I mean, enticement and pornography are two different charges, two different crimes, and so it seems to me the argument that you're making boils down to, if we know somebody is sexually interested in kids, we get to look for pornography too, even without any other indication. So we absolutely get to look for evidence of Mr. Boudreaux's sexual interest in children, including visual depictions of sexual... Is that argument, then, if I have probable cause to find evidence of child enticement, I also necessarily have probable cause to find evidence of child pornography. Is that your argument? Not necessarily, but in this case... Excuse me. Child pornography is one type of evidence that they could legitimately look for, knowing that he was using digital devices to entice children. So it isn't just the child pornography that they could look for. Again, the evidence of his interest in children would include what search terms he's using, both in terms of what search terms he's using to seek out visual depictions, as well as the search terms that he's using to track down someone like Mia on his social media. And again, absolutely, in this case, one of the things that they could legitimately look for are visual depictions of a sexual interest in children. As I say, that's one piece of this. It is also important to note, with respect to that overlap between the phone and the computer, to go back to Judge Lee's question, that Affiant testified expressly, this is in excerpts of the record, page 168, to the fact that even if communications are being done on a mobile device, there's likely to be a record of that found on a home device, either intentionally, as the Affiant noted, because this is valuable, these individuals highly value this information and are likely to try to store it, or even if this were something along the lines of a seek and delete behavior, there is still often, because of the syncing and backing up that happens with digital media, likely to be a record of a trail of that activity on a personal phone, or on a personal computer, a computer at home. And again, I would point to the fact that this connection between the sexual interest in children, and especially an interest in visual depictions of them, the fact that he wanted to be a personal photographer, that tied to his interest in pornography is absolutely a connection that there is a substantial likelihood that there would be evidence on his home computer. One key piece of evidence that's missing from this case that is often present in cases like this is in all the text communication between the defendant and the real or undercover person that they're communicating with, that there's at least a request, hey, send me a photo, or often even an exchange of photos, inappropriate photos. We don't have any of that here. Well, there actually were inappropriate photos sent, memes. It wasn't pornography, but there were memes. I acknowledge that is not in the affidavit, but as a matter of fact, that was there. Well, there's no doubt that there's sexual communication happening, right? You can't misunderstand what's going on in terms of his intention in communicating with what he thinks is an underage girl. But what I'm getting at is sort of the same question I was asking before of just because you have reason and evidence to think that one crime has been committed does not necessarily mean that that translates into also another crime. So if you have facts where somebody isn't trying to entice a minor, and in doing so is specifically asking for inappropriate photos of that minor, then there's no bridge to gap because child pornography is baked into what you're trying to do. That's not happening here. But child pornography is not the only thing that can be sought for. And again, this is at excerpts of the record, I believe it's page 161, which is the first page of the affidavit, which is what evidence is being sought on these computers. It is not being sought solely for child pornography. Again, visual depictions of children certainly illustrate that. That would make a lot of sense if the government was making a sort of plain view or good faith argument. But as far as I understand, you're not. And so the question I come back to is, is this warrant, is all of the specific information in this warrant driving at child pornography overbroad based on what facts were actually presented? No, Your Honor, because visual depictions of children are one form of evidence that displays Mr. DeBoudreau's sexual interest in children. The fact that this crime was committed using Internet and digital media is sufficient reason to search Mr. DeBoudreau's digital media for evidence of that crime, including the visual depictions of child pornography. And again, and I would make one more point, which is a common sense one. Mr. DeBoudreau went from seeking out someone he believed to be a 12-year-old girl, to sexually explicit communications, to showing up in Missoula with condoms and candy in a span of eight days. It is absolutely a reasonable inference that this was not his first attempt at enticement or his first expression of an illicit interest in sexual material-related activities. And that is expressly discussed in the affidavit that one of the, in addition to the visual depictions, what they can search for are evidence of other victims, evidence of what search terms he was using to go after, to find someone like, someone like a 12-year-old girl. What other things he was doing to, evidence of, again, what other friends he had made as he friended this one with respect to those juveniles. All of that goes to evidence of attempted sexual enticement of a child, regardless of the visual depictions. And unless the court has any further questions, either on this issue or any of the others. Great. Thank you. Thank you. So to address counsel's comment about personal photographer, I will note that the communications were inappropriate as far as eliciting what he believed to be a minor. But as the judge pointed out, there was no talk about any illicit pornographic photos of a child, no requests for nude photos within these texts, no photos sent from my client that were illicit or pornographic in any way, shape, or form. And then with respect to looking for more evidence of child enticement, Detective Wofstedt did that. He grabbed the phone, looked through the phone, and he testified at ER 456 that he knew at the time of the arrest that Mr. Boudreau viewed me as Facebook and that was it. He looked at this and he testified about the SMS text via Facebook Messenger. He knew that. Wofstedt testified at trial after the fact that he confirmed no illegal photos were on that phone whatsoever. He testified that no child pornographic images were on that phone at all. He didn't find any other evidence of child enticement. And the important point here with respect to the child enticement is all the evidence that supported that, he had all of it. And he confirmed that on the phone, on Mr. Boudreau's phone. He had all of that evidence already because it was sent to him. He knew it was there. And this overbroad warrant then leads a magistrate to walk down this path that based on just experience and just his experience in investigating these, that there is child pornography at his home on his electronic devices. And that is not supported by a fair probability. And if this court were to find that, I would submit to you that then anyone that commits a crime on the phone, you can get into the home and start looking through people's electronic devices that are not tied to any images, not tied to anything with respect to the actual offense that occurred. And the cases cited in my brief, albeit different types of cases in some instances, all had some fact particularly implicating a specific electronic device at the home that they eventually searched. And that did not happen here, Your Honor. Your Honor. Could we draw a distinction between, it seems like the warrant targets partly the enticement, maybe relate to the specific facts, and then perhaps a bit broader, just child pornography in general, maybe not related to this. If the warrant is focused more on the child enticement of the facts here, is that more appropriate as opposed to broad? Well, then, you know, he must have been involved in other, you know, child pornography. Well, I mean, I think you could argue the appropriateness of that particular warrant, but I think if you still go into the four corners of it, it still doesn't get you to the house. Because anything tied to this enticement, he had. He was trying to get into the house for one purpose, and that was to find what he suspected, based on experience, is child pornography. So you're in a sense right, but I think you still need more to implicate, with particularity, the electronic devices in the home, Your Honor. Thank you.
judges: BYBEE, LEE, FORREST